

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2006

# In Re: AT&T

Precedential or Non-Precedential: Precedential

Docket No. 05-2727

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: AT&T " (2006). *2006 Decisions*. Paper 653.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/653

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

Nos. 05-2727 & 05-2728

————

IN RE: AT&T CORPORATION
SECURITIES LITIGATION

MARION WASHBURN
and WILLIAM A. HOFFMANN, III,
Class Members and Objectors,
Appellants at No. 05-2727

JACQUELYNN D. FRAME
and DONALD J. FRAME,
Class Members and Objectors,
Appellants at No. 05-2728

————

On Appeal from the United States District Court
for the District of New Jersey
MDL Docket No.1399
D.C. Civil Action Master File No. 00-cv-5364
(Honorable Garrett E. Brown, Jr.)

————

Argued April 24, 2006

Before: SCIRICA, *Chief Judge*,
NYGAARD, *Circuit Judge*, and YOHN, *District Judge*[*]

(Filed July 20, 2006)

EDWARD F. SIEGEL, ESQUIRE (ARGUED)
5910 Landerbrook Drive, Suite 200
Corporate Center II
Cleveland, Ohio 44124

STEPHEN TSAI, ESQUIRE
941 East Main Street
Bridgewater, New Jersey 08807
        Attorneys for Appellants,
        Marion Washburn, William A. Hoffmann, III,
        Jacquelynn D. Frame and Donald J. Frame

KENNETH E. NELSON, ESQUIRE
2900 City Center Square
1100 Main Street
Kansas City, Missouri 64105
        Attorney for Appellants,
        Marion Washburn and William A. Hoffmann, III

---

[*]The Honorable William H. Yohn Jr., United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

ROY B. THOMPSON, ESQUIRE
Thompson & Bogran
15938 Southwest Quarry Road, Suite B-6
Lake Oswego, Oregon 97035
  Attorney for Appellants,
  Jacquelynn D. Frame and Donald J. Frame

SANFORD SVETCOV, ESQUIRE (ARGUED)
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins
100 Pine Street, Suite 2600
San Francisco, California 94111
  Attorney for Appellees,
  International Brotherhood of Electrical Workers
  of America, Local 98, The New Hampshire Retirement
  System, Robert Baker, Mohammed Karkanawi,
  Mauline Karkanawi, and Secure Holdings, Inc.

RACHEL B. NIEWOEHNER, ESQUIRE (ARGUED)
DAVID F. GRAHAM, ESQUIRE
Sidley Austin
One South Dearborn Street
Chicago, Illinois 60603
  Attorneys for Appellees,
  AT&T Corporation and C. Michael Armstrong

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

This is a consolidated appeal by four objectors to an award of attorneys' fees in the settlement of a securities fraud class action. The District Court approved the settlement agreement, including the attorneys' fees provisions. We will affirm.

**I.**

On October 27, 2000, several plaintiffs filed federal securities fraud actions, alleging the AT&T Corporation and its principal executives violated Securities and Exchange Commission Rule 10b-5 and §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. They alleged defendants made knowingly false statements between October 25, 1999, and May 1, 2000, about AT&T's anticipated performance for the year 2000 to artificially inflate the company's stock price. The District Court appointed the New Hampshire Retirement System, Secure Holdings, Inc., Robert Baker, Mohammed Karkanawi, and Mauline Coon as lead plaintiffs,[1] and approved

---

[1]The International Brotherhood of Electrical Workers Local 98 Pension Fund was later appointed as an additional lead plaintiff.

their retained counsel as lead counsel. Plaintiffs filed a consolidated complaint on February 14, 2001.

Defendants filed a motion to dismiss. On January 30, 2002, the District Court denied the motion with respect to the § 10(b) claims against AT&T and its Chief Executive Officer and Board Chairman, C. Michael Armstrong, granted the motion with respect to all claims against other individual defendants, and certified a class. After two years of discovery, including 80 depositions, the District Court granted partial summary judgment for defendants, but concluded a disputed issue of fact existed with respect to whether Armstrong's statements made at a December 6, 1999 analyst conference—projecting 9% to 11% revenue growth for AT&T's Business Services Unit in 2000—were made with actual knowledge of their falsity.

Trial began on October 5, 2004. The jury was selected and impaneled, the parties gave opening statements, and plaintiffs called eleven witnesses. After eight days of jury trial, at the suggestion of the District Judge, the parties began discussing settlement options. Negotiations were successful and the parties entered a tentative settlement agreement. Under the agreement, AT&T agreed to pay the class $100 million by May 1, 2005, in return for complete release of the class's claims. As soon as the funds were deposited into escrow, attorneys' fees and expenses would be paid to class counsel in an amount equal to 21.25% of the settlement fund ($21.25 million), in addition to costs and expenses of $5,465,996.79. The 21.25% fee resulted from a sliding scale formula negotiated between lead counsel

and the lead plaintiff New Hampshire Retirement Systems at the beginning of the case. The formula provided attorneys' fees would equal 15% of any settlement amount up to $25 million, 20% of any settlement amount between $25 million and $50 million, and 25% of any settlement amount over $50 million. The plan of allocation required class members to submit claim forms by March 9, 2005. Neither the settlement agreement nor the plan of allocation specified a timeline for payments to class members. Class members have not yet been paid.

On October 26, 2004, the District Court granted preliminary approval of the settlement agreement. Notice was mailed to more than one million potential class members, eight of whom filed objections, including appellants Marion Washburn, William A. Hoffman III, Jacquelynn D. Frame, and Donald J. Frame. The objections related to the attorneys' fees provisions, the form of notice, and certain ERISA claims. There were no objections to the settlement amount. On February 28, 2005, the District Court held a fairness hearing and on April 25, 2005, issued a memorandum opinion granting final approval of the settlement agreement, including the attorneys' fees provisions. The District Court denied objectors' motion for reconsideration.

Washburn, Hoffman, and the Frames now appeal,[2] contending the award of attorneys' fees and expenses is unfair and unreasonable because (1) it is excessive, (2) it employs a sliding scale that provides for the fee percentage to increase rather than decrease as the settlement amount increases, and (3) it provides for payment of the full amount of attorneys' fees before class members will receive payment. Objectors ask that fees be reduced to 15% of the settlement fund, in addition to requested costs and expenses, and that the pay-out be staged, with the final installment withheld until class members have been paid.

## II.

The District Court exercised jurisdiction over this federal securities fraud action under 28 U.S.C. § 1331. We have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291.

We review a district court's award of attorneys' fees in a securities class action for abuse of discretion. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005). "The standards employed calculating attorneys' fees awards are legal questions subject to plenary review, but '[t]he amount of a fee award . . . is within the district court's discretion so long as it employs correct standards and procedures and makes findings

---

[2]Of the other four original objectors, two withdrew their objections prior to the District Court's decision, and two do not appeal.

7

of fact not clearly erroneous.'" *Id.* (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1184 (3d Cir. 1995)). We require district courts "to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion." *Rite Aid*, 396 F.3d at 301.

## III.

## A.

Attorneys' fees are typically assessed through the percentage-of-recovery method or through the lodestar method. *See id.* at 300. The percentage-of-recovery method applies a certain percentage to the settlement fund. *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 732 n.10 (3d Cir. 2001). The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services.[3] *See id.* at 732 n.11.

In common fund cases such as this one, the percentage-of-recovery method is generally favored because "it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *Rite Aid,* 396

---

[3]The billing rate should be a blended billing rate of all attorneys who worked on the matter, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), and should be reasonable in light of "the given geographical area, the nature of the services provided, and the experience of the attorneys." *Id.* at 305.

F.3d. at 300 (quoting *In re The Prudential Ins. Co. of Am.*, 148 F.3d 283, 333 (3d Cir. 1998)). But we have recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award. *See Rite Aid*, 396 F.3d at 305; *Prudential*, 148 F.3d at 333. The cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier.[4] "[W]hen the multiplier is too great, the court should reconsider its

---

[4]"The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Rite Aid*, 396 F.3d at 305–06 (footnote omitted). Accordingly, when used as a cross-check in a common fund case, the lodestar calculation can be adjusted to account for particular circumstances, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risks involved. *See Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000). In statutory fee-shifting cases, "the Supreme Court has held that courts may not increase the lodestar amount in consideration of the attorney's contingent risk when calculating a fee." *Brytus v. Spang,* 203 F.3d 238, 243 (3d Cir. 2000). "'Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts.'" *Id.* (quoting *Pennsylvania v. De. Valley Citizens' Council for Clear Air*, 478 U.S. 565 (1986)).

calculation under the percentage-of-recovery method, with an eye toward reducing the award." *Rite Aid,* 396 F.3d at 306. The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method. *See id.* at 307.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), we set forth factors a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Rite Aid*, 396 F.3d at 301 n.9 (citing *Girsh*, 521 F.2d at 157).

The *Girsh* factors do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement. In *Prudential,* we held because of a "sea-change in the nature of class actions" since *Girsh* was decided in 1975, district courts

10

should also consider other potentially relevant and appropriate factors, including, among others:

> [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323 (citing Edward H. Cooper, Mass Torts Model, prepared for the Conference on Mass Torts, Mass Torts Working Group, Philadelphia, Pa. (May 1998)); *see also id.* at 324 n.73 (citing Judge William Schwarzer, *Settlement of Mass Tort Class Actions: Order Out of Chaos*, 80 Cornell L. Rev. 837, 843–44 (May 1995) and listing other potentially relevant factors).

11

When analyzing a fee award in a common fund case, a district court considers several factors, many of which are similar to the *Girsh* factors. *See Rite Aid,* 396 F.3d at 301 n.9. These include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). This list was not intended to be exhaustive. *See Gunter,* 223 F.3d at 195 n.1 (prefacing the list by stating "[a]mong other things, these factors include . . ."). In *Prudential,* we noted three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, *Prudential*, 148 F.3d at 338; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, *id.* at 340; and (3) any "innovative" terms of settlement, *id.* at 339. We stated that whenever a district court awards attorneys' fees in class action

12

cases, "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Id.* at 342.

In reviewing an attorneys' fees award in a class action settlement, a district court should consider the *Gunter* factors, the *Prudential* factors, and any other factors that are useful and relevant with respect to the particular facts of the case. The fee award reasonableness factors "need not be applied in a formulaic way" because each case is different, "and in certain cases, one factor may outweigh the rest." *Rite Aid*, 396 F.3d at 301 (quoting *Gunter*, 223 F.3d at 195 n.1). In cases involving extremely large settlement awards, district courts may give some of these factors less weight in evaluating a fee award. *See In re Cendant Corp. Litig.,* 264 F.3d 201, 283 (3d Cir. 2001); *Prudential*, 148 F.3d at 339. What is important is that in all cases, the district court "engage in robust assessments of the fee award reasonableness factors," *Rite Aid,* 396 F.3d at 302, recognizing "an especially acute need for close judicial scrutiny of fee arrangements in class action settlements." *Cendant PRIDES*, 243 F.3d at 730 (internal quotations omitted).

In its memorandum opinion dated April 25, 2005, the District Court explained in detail its reasons for approving the settlement and attorneys' fees award, providing us with an adequate and sufficient basis for review. *See Rite Aid*, 396 F.3d at 301 (requiring district courts "to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion."). The court first analyzed the

13

overall settlement in terms of the nine *Girsh* factors. Its subsequent discussion of the attorneys' fees provisions incorporates this analysis by reference. Accordingly, even though objectors challenge only the attorneys' fees award, we begin by reviewing the District Court's analysis of the settlement as a whole.[5]

The District Court concluded none of the *Girsch* factors weighed against approval of the settlement and factors one through five weighed "overwhelmingly" in favor of approval. (App. 4.) Under the first factor, the court noted "from its inception, the case involved complex legal and factual issues." (App. 5.) Though partial summary judgment had narrowed the issues, the remaining factual issue was not "straightforward or simple" as plaintiffs were left with the "formidable task" of proving defendants had actual knowledge their statement was false or misleading. (*Id.*) Furthermore, plaintiffs had the burden of proving loss causation and damages, which would "likely involve conceptually difficult economic theories and complex

---

[5]Defendants AT&T and Armstrong submitted a brief "to clarify that the appeal does not concern the fairness, reasonableness or adequacy of the Settlement . . . but addresses only the distinct issue of the District Court's approval of the attorneys' fees award, which was accomplished by separate order." (Br. of AT&T and Armstrong 5–6.) Because we affirm the attorneys' fees award, we need not reach the question of whether a decision reversing the judgment of the District Court would disrupt the settlement as a whole.

calculations" based on experts with "diametrically opposed opinions." (*Id.*) The court noted uncertainty as to whether the report and testimony of plaintiffs' damages expert would be admissible at trial, a question it reserved for the damages phase of trial. The court concluded the first factor weighed strongly in favor of approval.

Under the second *Girsh* factor, the court noted that out of more than one million class members notified of the proposed settlement, only eight objected. None of the objections opposed the settlement amount, and only four opposed the attorneys' fees award. No objections were filed by institutional investors, those with the greatest financial stake in the settlement. The District Court characterized this low level of objection as rare and concluded the second factor weighed in favor of approval.

Under the third *Girsh* factor, the District Court observed that because the case had been "vigorously litigated for over four years," (App. 7), class counsel had "a thorough and exhaustive appreciation for the merits of the case prior to settlement," (App. 8). The court noted the extent of discovery:

> Plaintiffs reviewed and analyzed over 4.5 million pages from Defendants' document production, and over 380,000 additional pages from forty-eight non-party witnesses. Plaintiffs conducted numerous informal interviews, deposed more than eighty fact witnesses, and produced over 3,000 pages of documents in response to Defendants' requests.

(App. 8.) The Court noted the filing of several motions, including motions to dismiss, complex discovery motions, a motion for class certification, and a motion for summary judgment. Furthermore, the case went to trial, which proceeded for two weeks before settlement. The court concluded class counsel had a thorough appreciation of the merits of the case prior to settlement and that the third factor weighed in favor of approval of the settlement.

The District Court noted high risks involved in establishing both liability and damages under the fourth and fifth *Girsch* factors. To succeed at trial, plaintiffs would have to prove the December 6, 1999 statement was made with actual knowledge of its falsity. The District Court noted the difficulty of this task, given that defendants "vehemently denied any wrongdoing," asserted a "reasonable basis existed" for the statement, and "intended to call key witnesses . . . who would support this assertion." (App. 8.) The court concluded that "whether the jury would have returned a favorable verdict for the Class remains uncertain." (App 9.) As for the risk of establishing damages, the court again noted the likelihood of a battle of the experts, and the possibility of plaintiffs' damages expert being excluded from trial.

The court concluded *Girsch* factors six through nine weighed "slightly or moderately in favor of approval." (App. 4.) It noted risks that the class would be narrowed and that a larger settlement would force AT&T into bankruptcy. It also noted the reasonableness of the settlement fund in light of the risks of

16

establishing liability. The court concluded the settlement "represents an excellent result for the Class considering the substantial risks Plaintiffs faced, and the absence of any guarantee of a favorable verdict." (App. 11.)

Having concluded the overall settlement warranted approval under the *Girsch* factors, the District Court turned to the issue of attorneys' fees and expenses, explicitly acknowledging its duty to engage in a "robust assessment" of the fee award reasonableness factors. (App. 13 (citing *Rite Aid*, 396 F.3d at 302).) It cited *Cendant* for the "proper standard" that should be applied in class action lawsuits brought under the Private Securities Law Reform Act. This standard entailed "afford[ing] a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel," a presumption that would "be rebutted when a district court finds the fee to be (prima facie) clearly excessive." (App. 13–14 (quoting *Cendant,* 264 F.3d at 220).) The District Court noted the 21.25% fee resulted from a sliding scale formula negotiated by lead counsel and lead plaintiff New Hampshire Retirement Systems at the beginning of the case, and had been subsequently approved by each court-appointed lead plaintiff. The court concluded the requested fee was presumptively reasonable and "the relevant inquiry for the district court is whether this presumption has been rebutted." (App. 14.)

The presumption of reasonableness set forth in *Cendant* was intended to "take into account the changes wrought by the

17

Reform Act." *Cendant,* 264 F.3d at 220. Prior to the Private Securities Law Reform Act, lead counsel were often instrumental in selecting lead plaintiffs. Under the PSLRA, the court appoints as lead plaintiff the plaintiff it determines is most capable of adequately representing the class's interests. The plaintiff with the largest financial stake in the action is presumptively the most adequate representative. Once appointed, the lead plaintiff is responsible for selecting and retaining lead counsel, subject to court approval.

But the PSLRA has not eliminated all difficulties with establishing fair and reasonable attorneys' fees in class action suits. As objectors note, the adversarial process is often "diluted" or entirely "suspended" during fee proceedings, and fee requests often go unchallenged. (Appellants' Br. 19–20 (quoting *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 52 (2nd Cir. 2000)).) Lead plaintiffs, having previously negotiated a fee arrangement with lead counsel, will rarely oppose a fee request. Class members may have little incentive to oppose a fee request, since any reduction will only result in a minor increase in their share of the settlement. And defendants have little incentive to oppose a fee request, since usually they are not impacted by the way in which the settlement fund is distributed.

Even more problematic are so-called "pay-to-play" arrangements, such as where a law firm makes campaign contributions to elected officials who control governmental pension funds and is selected as the fund's lead counsel. In these instances, the  relationship between lead plaintiff and lead

18

counsel may entail conflicts of interest. These arrangements have been noted in law review articles, *see* John J. Coffee, Jr., *The Attorney as Gatekeeper: An Agenda for the SEC*, 103 Colum. L. Rev. 1293, 1315 n.61 (2003); in newspaper articles, *see* Daniel Fisher, *Bedfellows*, Forbes, Feb. 13, 2006, at 102; Karen Donavan, *Legal Reform Turns a Steward into an Activist*, N.Y. Times, April 16, 2005, at C1; Daniel Fisher and Neil Weinberg, *The Class Action Industrial Complex*, Forbes, Sept. 20, 2004, at 150; Kevin McCoy, *Campaign Contributions or Conflicts of Interest?*, USA Today, Sept. 11, 2001, at B1; and even in congressional testimony, *see* Outlook for U.S. Capital Markets, Transcript of cong. testimony of James R. Copland, Director, Manhattan Institute, before the Comm. on H. Financial Services, Subcomm. on Capital Markets, Insurance and Government Sponsored Enterprises, 2006 WLNR 7026076 (Apr. 26, 2006).

We recognized this problem in *Cendant*, noting that "district courts should be particularly attuned to the risk of pay-to-play," a development "Congress may not have contemplated when it enacted the PSLRA." 264 F.3d at 270 n.49. Yet we did not specifically discuss the problem in relation to the presumption of reasonableness. We only noted, in general terms, "an arguable tension between the general schema of the PSLRA on the one hand and its overarching provision that requires the court to insure that counsel fees not exceed a reasonable amount, on the other." *Id.* at 220 (internal citation omitted). We acknowledged the court's "independent obligation to ensure the reasonableness of any fee request." *Id.* at 281–82.

19

We now emphasize that the presumption of reasonableness set forth in *Cendant* does not diminish a court's responsibility to closely scrutinize all fee arrangements to ensure fees do not exceed a reasonable amount. We caution against affording the presumption too much weight at the expense of the court's duty to act as "a fiduciary guarding the rights of absent class members." *Id.* at 231.

After noting the presumption, the District Court reviewed the fee award reasonableness factors and explained "[g]iven the similarity and overlap of the *Girsh* factors with the factors the Court must consider here, the Court incorporates by reference the reasons given for approval of the settlement." (App. 14.) The court then addressed "additional reasons that support approval of attorneys' fees in this matter." (*Id.*) These included the absence of substantial objections to the requested attorneys' fees, the "excellent, sizeable" settlement amount, the number of persons who would benefit from the settlement, the skill and efficiency of the attorneys, and the "substantial amount of time and effort" invested by lead counsel. (App. 14–17). The District Court concluded the fee award was both fair and reasonable under the fee award reasonableness factors.

The District Court cross-checked the percentage fee award using the lodestar method, comparing the $21.25 million award to a $16.6 million lodestar calculation (based on the hours submitted by counsel multiplied by the blended billing rates of all attorneys and paraprofessionals who worked on the case).

The court concluded the corresponding multiplier of 1.28[6] indicated a "truly reasonable fee award." (App. 19.) Finally, the District Court approved class counsel's request for reimbursement of expenses in the amount of $5,465,996.79, finding "these expenses were reasonably and appropriately incurred during the prosecution of this case, and sufficiently documented in the declarations." (App. 20.)

---

[6]On appeal, objectors contend the 1.28 lodestar multiplier is misleading because it reflects time class counsel spent on a contested lead plaintiff motion. They contend class counsel should not be compensated for efforts expended before they began representing the entire class. At oral argument, objectors' counsel suggested district courts should require class counsel to submit their time sheets, partly to ensure time spent becoming class counsel is not included in the lodestar calculation. These issues were not raised before the District Court. Regardless, we have noted the lodestar cross-check calculation need not entail "mathematical precision" or "bean-counting," *Rite Aid*, 396 F.3d at 306, and is "'not a full-blown lodestar inquiry,'" *id.* at 307, n.16 (quoting Report of the Third Circuit Task Force, Selection of Class Counsel, 208 F.R.D. 340, 423 (2002)). District judges have the authority to request time sheets, subject to their sound discretion whether or not to do so. Here, we are satisfied with the District Court's conclusion that the lodestar calculation was based on an appropriate number of hours, as supported by declarations submitted by the parties.

The District Court's analysis and discussion demonstrates it considered the fee award reasonableness factors relevant to the facts of the case—directly in its discussion of fees and indirectly in its discussion of the *Girsh* factors. A review of these factors demonstrates the District Court did not abuse its discretion in approving the attorneys' fees award.

The District Court addressed the first fee award reasonableness factor directly, stating "[w]ith regard to the size and nature of the common fund and the number of persons benefitted by the settlement . . . Lead Counsel were able to obtain an excellent, sizeable result on behalf of the Class despite the substantial risks they faced in establishing liability." (App. 16.) The court noted that many thousands of people would likely participate in settlement, given that notice of the settlement was sent to over a million potential class members.

Objectors contend the size of the settlement amount is misleading, since relative to the size of the class, $100 million dollars is not such a large fund. They also note it represents only 4% recovery of the total damages claimed. At oral argument, class counsel contended the 4% figure was misleading. They noted the class's original damages claim of $2.9 billion—of which the settlement amount represents approximately 4%—was asserted long before the class's position was severely weakened by the grant of partial summary judgment for the defendants. Based on a defense expert's estimate of damages after summary judgment of $1.88/share,

class counsel contends the settlement amount ($.44/share) represents approximately 25% recovery.

As the District Court noted in its discussion of the eighth *Girsch* factor, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (App. 10 (quoting *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000)).) Rather, the percentage recovery, "must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*.'" *Id.* The District Court did not abuse its discretion in concluding that in light of the risks of establishing liability and damages, the $100 million settlement was an "excellent" result, weighing in favor of approval of the attorneys' fees award. (App. 16–17.)

The District Court addressed the second fee award reasonableness factor both in its discussion of the second *Girsch* factor and its discussion of attorneys' fees, concluding that "the absence of substantial objections by class members to the fees requested by counsel strongly supports approval." (App. 14.) The court noted that out of one million potential class members to whom notice was sent, only eight objected. The District Court did not abuse its discretion by characterizing this low level of objection as rare. *See Rite Aid*, 396 F.3d at 305 (characterizing two objections, after notice of a settlement and fee request was mailed to 300,000 class members, as "a low

23

level of objection" that was a "rare phenomenon") (internal quotations omitted).

The third fee award reasonableness factor—the skill and efficiency of the attorneys prosecuting this action—was addressed under the third *Girsh* factor and in the discussion of attorneys' fees. In concluding this factor favored approval of the award, the court observed, "Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court." (App. 17.) Given the length of the case and the difficulty of the issues involved, we do not think the District Court abused its discretion in concluding this factor weighed in favor of approval of the attorneys' fees.

The District Court addressed the fourth fee award reasonableness factor—the complexity and duration of the litigation—in its discussion of attorneys' fees and in its analysis under the first *Girsh* factor. In both places, it noted the substantial risks plaintiffs faced in establishing liability and damages. In *Rite Aid*, we emphasized the difficulty of proving actual knowledge under § 10(b) of the Securities Exchange Act, and concluded this factor weighed in favor of approval of the fee request. *See Rite Aid,* 396 F.3d at 304. Here, too, plaintiffs faced the difficult task of proving defendants had actual knowledge of the falsity of the statement made on December 6, 1999. We do not believe the District Court abused its discretion

in concluding the potential difficulty of this task weighed in favor of approval of both the settlement and the fee award.

The District Court addressed the fifth fee award reasonableness factor, "the risk of nonpayment," under its analysis of the seventh *Girsh* factor. The court noted plaintiffs' contention that AT&T may not have been able to withstand a multi-million or billion dollar judgment, and cited *Cendant* for the proposition that "the possibility of bankruptcy is quite real when the settlement or judgment numbers sufficiently increase." (App. 10 (quoting *Cendant,* 264 F.3d at 241).) We think the chances of AT&T going bankrupt are small, but we do not think the District Court abused its discretion in concluding that because of a minor risk in this regard, the risk of nonpayment "weigh[ed] in favor, albeit only slightly, of approval" of the settlement and by implication, of the fee award. (App. 10.)

The sixth fee award reasonableness factor—the amount of time devoted to the case by plaintiffs' counsel—overlaps with the third. As noted, the District Court repeatedly emphasized that class counsel's efforts in achieving this settlement were substantial. The court stated, "[h]aving accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award, Lead Counsel nonetheless maintained vigor and dedication throughout." (App. 17.) Considering the number of pre-trial motions class counsel litigated, the extent of discovery, and the two weeks of trial, we conclude the District Court did not abuse

25

its discretion in concluding class counsel's efforts weighed in favor of approval.

The District Court addressed the seventh fee award reasonableness factor—awards in similar cases—in addressing the objections that were made to the amount of attorneys' fees under its discussion of the second fee award reasonableness factor. The court acknowledged a 2003 study, cited by objectors, concluding 15.1% was the average percentage for fee awards in class actions resulting in settlements over $100 million. But the District Court noted "this lawsuit may be characterized as anything but average," and objectors had not cited "controlling authority that would require this Court to make a downward adjustment." (App. 15.) The court concluded objectors had failed to present evidence sufficient to rebut the presumption of reasonableness.[7]

Other than the size of the settlement fund, this last factor—awards in similar cases—is the only one that objectors address on appeal. They contend the fee arrangement was not adequately negotiated or contested because the lead plaintiff who originally negotiated the fee arrangement, New Hampshire Retirement Systems, was no longer a lead plaintiff at the time of settlement. They contend there is no evidence that any subsequently appointed lead plaintiff "engaged in any rigorous negotiation, revisited the agreement, or did anything other than

---

[7]We again caution courts to refrain from granting this presumption too much weight.

26

to 'rubber stamp' the deal." (Appellants' Br. 11.) In *Cendant,* we stated the presumption of reasonableness would likely be "abrogated entirely" by a showing that unusual and unexpected factual and/or legal developments "materially altered" the original premises of the negotiated agreement. *Cendant*, 264 F.3d at 282–283. Were it the case that New Hampshire Retirement Systems was no longer a lead plaintiff at the time of settlement, and that subsequent lead plaintiffs had not carefully reviewed the fee arrangement, we "could be justified in holding that the presumption of reasonableness had been abrogated." *Id.* at 283. We would then "review the fee request using the traditional standards." *Id.* But New Hampshire Retirement Systems was a lead plaintiff at the time of settlement. (*See* App. 609–13.) And even under "traditional standards," in the absence of a presumption, we would conclude the District Court had not abused its discretion in declining to reduce the fee award.

Objectors contend "courts are increasingly finding that class counsel can be reasonably compensated by a fee award that is substantially less than 20% of the settlement fund." (Appellants' Br. 14.) They cite a study, which they cited to the District Court, concluding the average award for fees and costs in class action cases whose settlements were valued over $100 million was 15.1%, and the average award for fees and costs in all cases was 18.4%. *See* Stuart J. Logan, Jack Moshman, and Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 169 (2003). They also cite several cases awarding percentages lower than what class counsel received here, allegedly "demonstrat[ing] that the 26.7%

27

awarded to Class Counsel is excessive and unreasonable."[8] (Appellants' Br. 10.) *See e.g., Cendant*, 243 F. Supp. 2d 166, 174 (D.N.J. 2003), *on remand from* 264 F.3d 201 (3d Cir. 2001) (reducing initial fee award of $262 million, about 8.275% of settlement, to $55 million); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 45 (2nd Cir. 2000) (upholding fee of 4% of settlement); *In re Interpublic Sec. Litig.*, 2004 US Dist. LEXIS 21429 (S.D.N.Y. Oct. 27, 2004) (awarding fee of 12% of settlement amount); *In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (awarding fee representing approximately 12% of settlement amount); *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1116 (N.D. Cal. 2003) (concluding fee award of 16% award was fair, adequate and reasonable); *In re Bankamerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002) (awarding fees of 18% of settlement amount rather than the requested 25%).

Class counsel contends the cases cited by objectors as supporting a lower fee award can be distinguished on two

---

[8]Objectors repeatedly refer to the percentage award as being 26.7%. But the attorneys' fee award was 21.25% of the settlement fund. Expenses are generally considered and reimbursed separately from attorneys' fees, and it is accordingly misleading to compare the 26.7% figure against the percentage fee awards granted in other cases.

grounds.  First, they lack the extent of litigation involved here,[9] which entailed four years of litigation and two weeks of trial, leading to a total of 48,000 hours spent by lead counsel in discovery, motion practice, and trial.  Second, the cited cases involved significant disparities between the originally requested fee award and the lodestar cross-check.  For example, lead counsel in *Goldberger* sought a $13.5 million fee, but its lodestar was $1.3 million, leading to a lodestar multiplier of ten.  Here, the lodestar cross-check produced a multiplier of 1.28.  We have noted that the lodestar multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."  *Rite Aid*, 396 F.3d at 307.  But we think a multiplier of 1.28 is well within a reasonable range, particularly given the District Court's emphasis on the significant time and effort devoted to the case by class counsel.

As a comparison, we approved of a lodestar multiplier of 2.99 in *Cendant PRIDES*, in a case we stated "was neither legally nor factually complex."  243 F.3d at 742.  The case lasted only four months, "discovery was virtually nonexistent" *id.* at 736, and counsel spent an estimated total of 5,600 hours on

---

[9]*In re Bankamerica Corp. Securities Litigation*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002), is the one exception, involving substantial amounts of time and litigation.  But in *BankAmerica*, there was a significant disparity between the requested percentage fee award of 25% and the lodestar cross-check, leading to an approximate lodestar multiplier of four.  *Id.*  Here, the 1.28 multiplier does not indicate a need to reduce the fees.

29

the case, *id.* at 735. We noted, "the case was relatively simple in terms of proof, in that Cendant had conceded liability and no risks pertaining to liability or collection were pertinent." *Id.* If a lodestar of 2.99 was reasonable in a short and "relatively simple" case, we believe the District Court did not abuse its discretion in concluding a lodestar of 1.28 was reasonable in this lengthy, relatively complex case.

Furthermore, class counsel in this case was not aided by a government investigation. In *Prudential*, we noted this as a significant factor for district courts to consider. There, we remanded the fee award for the district court's further consideration after determining the court had failed to distinguish between benefits created by class counsel and those created by a multi-state life insurance task force, organized to investigate allegations against the defendant. *See Prudential,* 148 F.3d at 338. We concluded the district court had improperly "credited class counsel with creating the entire value of the settlement." *Id.* Here, class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel. This strengthens the District Court's conclusion that the fee award was fair and reasonable.

Objectors acknowledge that "[b]oth Class Counsel and Objector's counsel have cited numerous cases supporting their view of the reasonableness of attorney fees," and concede that "[e]ach could 'string-cite' many more cases supporting its position." (Reply Br. 5.) They contend that "at the very least,

30

the mere fact that some courts have awarded high fees in the past ought not to be considered a justification for awarding the fee requested in the face of ever-increasing evidence that class counsel can be reasonably compensated at rates far less than those that might have prevailed in the past." (Appellants' Br. 14.) But the District Court did not justify its approval of the fee by reference to high fees in the past. It justified its approval by demonstrating this case was not an average case. The District Court "consider[ed] the relevant circumstances of the particular case," *Cendant PRIDES*, 243 F.3d at 736, and concluded the fee was not excessive. In light of its analysis under the fee award reasonableness factors and the reasonable lodestar multiplier, the District Court did not abuse its discretion in concluding the fee award was not excessive.

**B.**

Objectors also contend the fee arrangement, which provided for the fee percentage to increase with the size of the settlement fund, was unfair and unreasonable. They cite *Goldberger v. Integrated Resources, Inc.,* for the proposition that "[o]bviously, it is not ten times as difficult to prepare, and try or settle a 10-million-dollar case as it is to try a 1-million-dollar case." (Appellants' Br. 20 (quoting *Goldberger,* 209 F.3d at 52).) Based on this logic, they contend the District Court should have required the fee percentage to be based on a sliding scale that bears an inverse relationship to the size of the settlement.

31

We have recognized that "it may be appropriate for percentage fees awarded in large recovery cases to be smaller in percentage terms that those with smaller recoveries." *Rite Aid*, 396 F.3d at 302. In *Prudential*, we agreed with the district court's reduction of a percentage award in a case where the settlement fund was going to be at least $410 million, explaining "[t]he basis for this inverse relationship is the belief that in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." 148 F.3d at 339 (internal quotations omitted); *see also Cendant*, 264 F.3d at 284 n.55 ("[O]rdinarily, the percentage of a recovery devoted to attorneys fees should decrease as the size of the overall settlement or recovery increases.").[10] But while it may be appropriate in some circumstances for fee percentages in large recovery cases to be smaller than those in smaller recovery cases, "there is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizable fund." *Rite Aid*, 396 F.3d at 303. In *RiteAid*, we held the district court did not abuse its discretion in declining to apply a percentage fee scale that decreased as the size of the settlement increased, concluding "the declining percentage concept does not trump the fact-intensive *Prudential/Gunter*

---

[10]In *Cendant*, we also recognized the declining percentage principle is "criticized by respected courts and commentators, who contend that such a fee scale often gives counsel an incentive to settle cases too early and too cheaply." *In re Cendant Corp. Litig.,* 264 F.3d 201, 284 n.55 (3d Cir. 2001).

analysis." *Id.* We distinguished *Prudential*, which we concluded "does not mandate application of the declining percentage sliding scale." *Id.* In *Prudential*, in vacating a fee award of $90 million on a settlement estimated at $1 billion, much of our concern was case-specific. 148 F.3d at 338–340. We questioned such a significant fee award when "much of the settlement was achieved by [a multi-state insurance task force], and other enhancements resulted from the separate negotiations of state regulators." *Id.* at 342. Here, the District Court did not abuse its discretion in concluding the sliding scale was fair and reasonable in light of the size of the settlement fund, the difficulty and length of the litigation, and the fact that all benefits accruing to class members are properly credited to the efforts of class counsel.

## C.

Nor did the District Court abuse its discretion in approving a single payment of attorneys' fees and expenses. Objectors contend a portion of the attorneys' fees should be withheld pending payment of claims to class members. They contend payments should be staggered, and class counsel should be required to file periodic and final reports to prove class members are receiving relief. Otherwise, they fear class counsel will abandon the class as soon as their fees are paid.

The District Court noted there was no indication class counsel would stop working diligently on behalf of the class, "having witnessed [class counsel] vigorously prosecute this action for four years without any guarantee of success." (App.

33

16.)  We see no evidence on the record that lead counsel has ever abandoned a class, or is likely to do so in this case.  Class counsel notes that one of the objectors, Washburn, admitted he was "not challenging the ability or integrity" of class counsel who, he acknowledged, were "the best in the business" and "should get paid for what they've done."  (Appellees' Br. 21.)

Objectors cite certain cases in which staggered fee payments have been applied in class action settlements.  *See, e.g., In re Prudential Ins. Co. of Am.*, 962 F. Supp. 450 (D.N.J. 1997), *aff'd in part* (class certification and settlement) *and vacated and remanded in part* (attorneys' fees), 148 F.3d 283 (3d Cir. 1998).  *Prudential* was an "'atypical common fund case' involving an uncapped, 'future fund' whose ultimate value [was] dependent on the final number of claims remediated under the settlement."  *Prudential,* 148 F.3d at 334 (quoting *In re Prudential Ins. Co. of Am.* (Fee Opinion), 962 F. Supp. 572, 583 (D.N.J. 1997)).  We remanded the fee award for the district court's further consideration, but we approved its two-part structure.  The first part of the award would be calculated as a percentage of the guaranteed minimum settlement amount and the second would be calculated as a percentage of the future payments.  We concluded this bifurcated structure "obviate[d] the need to guesstimate the value of the settlement."  *Id.* at 333 (quoting Fee Opinion, 962 F. Supp. at 589).  Here, the settlement amount of $100 million is fixed, and there is no need to stage the payout to ensure attorneys' fees are in the correct amount.

Moreover, the District Court here retained jurisdiction, and stated it "will be available to Class members for final resolution of any dispute that may arise." (App. 16.) We have noted that "[u]nder Rule 23(e), the District Court acts as a fiduciary guarding the rights of absent class members." *Cendant*, 264 F.3d at 231; *see also* Fed. R. Civ. P. 23(h) advisory committee's notes (2003) ("Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process"). Given the District Court's obligation to thoroughly review the settlement and its attorneys' fees provisions to ensure fairness and reasonableness, *see Rite Aid,* 396 F.3d at 299, we are confident in this case that should objectors' fears regarding class counsel be realized, the court will be available to ensure proper administration of the settlement. *See also* Report of the Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 255 (1985) (explaining the court "must monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function").

## IV.

For the reasons set forth, we will affirm the judgment of the District Court.