**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-2012, 18-2225, 18-2249, 18-2253, 18-2281, 18-2332, 18-2416, 18-2417, 18-2418, 18-2419, 18-2422, 18-2650, 18-2651, 18-2661, 18-2724, and 19-1385

In Re: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
MELVIN ALDRIDGE; PATRISE ALEXANDER; CHARLIE ANDERSON; CHARLES E. ARBUCKLE; CASSANDRA BAILEY, individually and as the Representative of the Estate of JOHNNY BAILEY; ROD BERNSTINE; REATHA BROWN, Individually and as the Representative of the Estate of AARON BROWN, JR.; CURTIS CEASAR, JR.; LARRY CENTERS; TREVOR COBB; DARRELL COLBERT; ELBERT CRAWFORD, III; CHRISTOPHER CROOMS; GARY CUTSINGER; JERRY W. DAVIS; TIM DENTON; LELAND C. DOUGLAS, JR.; MICHAEL DUMAS; CORRIS ERVIN; ROBERT EVANS; DOAK FIELD; JAMES FRANCIS; BALDWIN MALCOLM FRANK; DERRICK FRAZIER; MURRAY E. GARRETT; CLYDE P. GLOSSON; ANTHONY GUILLLORY; RODERICK W. HARRIS; WILMER K. HICKS, JR.; PATRICK JACKSON; FULTON JOHNSON; RICHARD JOHNSON; GARY JONES; ERIC KELLY; PATSY LEWIS, Individually and as the Representative of the Estate of MARK LEWIS; RYAN MCCOY; EMANUEL MCNEIL; GERALD MCNEIL; JERRY JAMES MOSES; ANTHONY E. NEWSOM; WINSLOW OLIVER; JOHN OWENS; ROBERT POLLARD; DERRICK POPE; JIMMY ROBINSON; GLENELL SANDERS; THOMAS SANDERS; TODD SCOTT; NILO SILVAN; MATTHEW SINCLAIR; DWIGHT A. SCALES; RICHARD A. SILER; FRANKIE SMITH; ERIC J. SWANN; ANTHONY TONEY; HERBERT E. WILLIAMS; JAMES WILLIAMS, JR.; BUTCH WOOLFOLK; KEITH WOODSIDE; MILTON WYNN; JAMES A. YOUNG, SR.; LUBEL VOYLES, LLP; WASHINGTON & ASSOCIATES PLLC; THE CANADY LAW FIRM,
Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(No. 2:12-md-02323)
District Judge: Honorable Anita B. Brody
_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 24, 2020
_____

Before:  AMBRO, SHWARTZ, and BIBAS, Circuit Judges.
(Filed: May 7, 2020)
_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

Counsel for various plaintiffs and objectors appeal the attorneys' fee award in the National Football League ("NFL") concussion injury litigation.  For the reasons set forth herein, in all but one instance, the District Court's fee award was factually and legally sound and reflected a proper exercise of its discretion.  As a result, we will affirm in part and remand in part.

I

A

"[R]etired professional football players" sued "Defendants NFL and NFL Properties, LLC (collectively 'NFL Defendants') [for] fail[ing] to take reasonable actions to protect players from the chronic risks posed by concussive and sub-concussive head injuries."  In re Nat'l Football League Players Concussion Injury Litig. (NFL I), 775 F.3d 570, 572 (3d Cir. 2014).

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

The District Court appointed Christopher Seeger of Seeger Weiss LLP to serve as Co-Lead Class Counsel. Seeger took the lead in managing the case and communicating with the Court. The Court also established an Executive Committee to handle the coordination of the proceedings, and a Steering Committee, to handle "all necessary pretrial tasks." In re Nat'l Football League Players Concussion Injury Litig. (NFL II), 821 F.3d 410, 421 (3d Cir. 2016). In addition, the Court appointed a time-and-expense auditor to monitor counsels' fees and expenses. Thereafter, master complaints were filed to supersede the many complaints, and Defendants moved to dismiss. Id. at 421-22.

While the motion was pending, the parties participated in a mediation and reached a settlement. Id. at 422. Class counsel then filed a class action complaint and moved for preliminary class certification and approval of the settlement. Id. The Court "denied the motion because it had doubts that the capped fund for paying claims would be sufficient." Id. at 422-23. The parties thereafter "reached a revised settlement that uncapped the fund for compensating retired players." Id. at 423.

Several groups filed objections to the revised settlement, including seven former NFL players, known as the Faneca Objectors. They argued, among other things, that the interests of all class members were not adequately represented and that the revised settlement would not compensate all afflicted class members. To address these concerns, "[c]lass counsel filed a second motion for preliminary class certification," which was granted, and the District Court "preliminarily

3

approved the settlement, conditionally certified the class, approved classwide notice, and scheduled a final fairness hearing." Id. (citing In re Nat'l Football League Players' Concussion Injury Litig., 301 F.R.D. 191 (E.D. Pa. 2014)). The Faneca Objectors and others renewed their objections to the settlement, complaining about other purported defects in the settlement.

Thereafter, the District Court held "a day-long fairness hearing and heard argument from class counsel, the NFL, and several objectors." Id. The Court appointed Faneca Objectors' counsel to present the objectors' arguments. "After the hearing, the Court proposed several changes to benefit class members," which the parties adopted, and it thereafter "granted the motion for class certification and final approval of the amended settlement[.]"[1] Id. We affirmed. Id. at 420.

---

[1] In sum,

> [t]he settlement has three components: (1) an uncapped Monetary Award Fund that provides compensation for retired players who submit proof of certain diagnoses; (2) a $75 million Baseline Assessment Program that provides eligible retired players with free baseline assessment examinations of their objective neurological functioning; and (3) a $10 million Education Fund to instruct football players about injury prevention.

NFL II, 821 F.3d at 423.

B

In addition to benefits to the class, the settlement required Defendants to pay class counsel reasonable fees and costs up to $112.5 million. On behalf of counsel, Seeger filed a fee petition seeking the full $112.5 million.[2]

The District Court applied the factors set forth in Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000), and In re Prudential Insurance Co. of America Sales Practice Litigation Agent Actions, 148 F.3d 283 (3d Cir. 1998), performed a lodestar cross-check, and awarded $106,817,220.62 in attorneys' fees[3] and $5,682,779.38 in costs. In re Nat'l Football League Players' Concussion Injury Litig., No. 2:12-md-02323-AB, 2018 WL 1635648, at *1, 3-9 (E.D. Pa. Apr. 5, 2018). The fee award amounted to approximately 11% of the then-present value of the settlement. Id. at *1, 3, 7-8.

To determine how to allocate the award among counsel, the District Court ordered Seeger to "submit a detailed submission as a proposal for the allocation of lawyers' fees among class counsel[,] including the precise amounts to be awarded along with a justification of those amounts based on an analysis of the work

---

[2] The District Court approved the settlement term that provided for up to a 5% holdback from each Monetary Award to pay for costs and fees associated with implementing the settlement. The Court acted within its discretion to overrule the more than twenty objections to this term, as it provides funds for work on behalf of eligible players seeking benefits in the future. In re Nat'l Football League Players' Concussion Injury Litig., No. 2:12-md-023230AB, 2018 WL 1635648, at * 2 (E.D. Pa. Apr. 15, 2018).

[3] Rather than adopting the proposed hourly rates for counsel and paralegals, the District Court applied a blended billing rate, averaged from rates for partners, of counsel attorneys, associates, contract attorneys, and paralegals.

performed." JA 7920. Attorneys seeking fees provided Seeger with itemized timesheets and declarations, which he used to develop his proposal. Seeger analyzed the records and provided the Court with declarations, which set forth each requesting firm's "common benefit hours and expenses" and described "what they did to merit" a fee award. JA 8228. He then submitted a proposed allocation to the Court. Numerous declarations were filed in opposition to the proposed allocation. In reply, Seeger explained the process for reviewing time sheets and stated that he "provided each firm with an opportunity to justify why any challenged time should be deemed 'common benefit' time." JA 8227.

After receiving Seeger's recommendation and the objections, the District Court held a hearing. During the hearing, firms challenging Seeger's proposed fee allocation were each given an opportunity to present oral arguments. After considering the arguments and submissions, the Court issued a detailed opinion allocating the attorneys' fees.[4] To calculate the multipliers, the Court considered the same factors that Seeger used, namely: (1) the value of the contribution to the settlement negotiations and defense of the settlement on appeal, (2) meaningful

---

[4] The relevant allocations are as follows:

| | |
|---|---|
| Anapol Weiss | $4,643,590.00 |
| Kreindler & Kreindler | $1,491,097.30 |
| Locks Law Firm | $3,855,625.00 |
| Mitnick Law | $673,959.38 |
| Pope McGlamry | $829,030.00 |
| Seeger Weiss | $51,737,185.70 |
| Zimmerman Reed | $811,600.87 |
| Faneca Objectors | $350,000.00 |

involvement in the settlement negotiations and defense, and (3) appointment to leadership roles in the litigation.[5] The Court considered "the legal acumen necessary to construct and defend this unique settlement" and whether fee applicants were "involved in this litigation from the earliest stages through to the hard fought appeal." JA 88. The Court also noted the value of Seeger's recommendation because of his "front row seat for the [settlement] negotiations and the legal rigors of the appellate process." JA 90.

Various firms appeal the awards and lodge multiple challenges. Among other things, Appellants claim that the method used to allocate the fees among counsel, including Seeger's recommender role, was improper. Other Appellants, like the Faneca Objectors, object to the specific award that they received.

## II[6]

### A

We have carefully reviewed each argument, the record, the governing law, and the District Court's opinion and, with just one exception, conclude that the

---

[5] The District Court agreed with Seeger that membership on the Steering or Executive Committees alone did not warrant a multiplier greater than 1.0.

[6] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review class action fee decisions for abuse of discretion. In re Diet Drugs (Diet Drugs II), 582 F.3d 524, 538 (3d Cir. 2009). We give district courts considerable deference in fee decisions, see In re AT & T Corp., 455 F.3d 160, 163 (3d Cir. 2006), because "[a] judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to [her] by particular attorneys," Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 169 (3d Cir. 1973).

District Court soundly exercised its discretion in its fee awards and procedures employed.[7] With one exception, the Court provided thorough explanations for each of its rulings. As a result, it is unnecessary for us to dwell on the numerous challenges.[8] We do, however, briefly address one issue that many Appellants have raised concerning the Court's use of Seeger to make recommendations about the allocation. We also explain why remand is necessary for one of the fee awards.

B

We first consider whether it was proper for the District Court to permit Seeger to make a recommendation to the Court regarding how to allocate the more than $100 million in fees to himself and all other counsel.

---

[7] In fact, given the thorough consideration the District Court gave to each fee application, "[w]e can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." Fox v. Vice, 563 U.S. 826, 838 (2011).

[8] As stated above, we need not specifically address each of the many arguments made because all but one of Appellants' challenges were well within the District Court's discretion. We do, however, note that the Court's total fee award reflected meticulous application of the Gunter/Prudential factors and the lodestar cross-check, and its lodestar cross-check revealed a multiplier of 2.96, which is within the acceptable range in this Circuit. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001) (observing a range of reasonable multipliers from 1.35 to 2.99). In addition, since the lodestar served only as a cross-check, it was within the Court's discretion to decline to make public the billing records. See Diet Drugs II, 582 F.3d at 539 (holding that the district court did not need to consider or make public class counsel's individual billing records); Prudential, 148 F.3d at 341-42 (upholding district court's refusal of discovery of time records in a percentage-of-recovery case, where lodestar is used only as a cross-check). The Court also did not abuse its discretion in capping the fees for individually retained private attorneys at 22% given the expert testimony and similar cases that support such a ruling.

8

The District Court has the authority to decide how to gather attorneys' fees information and make its assessment, see, e.g., In re Diet Drugs (Diet Drugs II), 582 F.3d 524, 539 (3d Cir. 2009) ("In large cases, especially one of prodigious proportions like this, reliance on summaries is certainly within the discretion of the district court."), and to appoint others to assist with or provide recommendations for calculating and allocating attorneys' fees, In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 533 n.15 (3d Cir. 2004); Prudential, 148 F.3d at 329 n.96, 330. When a court chooses to seek input from interested lawyers, it of course must closely scrutinize their recommendations, In re Diet Drugs (Diet Drugs I), 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring), and, as the fiduciary of the class, it must remain the final arbiter of both the amount of the award and to whom it is allocated based upon the work performed and whether that work benefitted the class, see, e.g., In re AT & T Corp., 455 F.3d 160, 168-69 (3d Cir. 2006); In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 308 (3d Cir. 2005), as amended (Feb. 25, 2005).

Here, the District Court sought input from Seeger in making its allocation decision. Given Seeger's role as Co-Lead Class Counsel from almost the inception of the case through settlement and multiple appeals, the Court reasonably viewed him as uniquely knowledgeable about the work performed by all counsel and believed that he could provide a perspective about how their work benefitted the class. Seeger, however, only gave the Court a recommendation. The Court also considered vigorous challenges to the recommendation and gave

9

all counsel an opportunity to share their views about their own contributions to the case. Thus, all counsel had a chance to correct any misimpressions that they believed Seeger conveyed. Armed with this information, the Court did not blindly accept a recommendation from a single interested counsel but rather considered that recommendation in light of its knowledge of the case, the work of all counsel, and how all counsel described their own work.[9] As result, the Court conducted a "robust" and "thorough judicial review" of each application. See Sullivan v. DB Invs., Inc., 667 F.3d 273, 329 (3d Cir. 2011) (quoting Diet Drugs II, 582 F.3d at 537-38).

Furthermore, at all times, the District Court understood its role as the ultimate decisionmaker and fulfilled its obligation to make an independent assessment of each fee petition. In making allocation decisions, the Court considered whether the fee applicant held an "appointed leadership" role in the case, whether counsel was meaningfully involved throughout the litigation, whether counsel demonstrated "the legal acumen necessary to construct and defend this unique settlement," and the "value" counsel provided "to the settlement negotiations and the defense of the [s]ettlement on appeal." JA 88.

Given our deference to the District Court's methodology in making its fee awards, In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55

---

[9] The District Court's rejection of the proposed hourly rates as unreasonable and its application of a blended rate is just one way it showed that Seeger did not have special influence over this process.

10

F.3d 768, 821 (3d Cir. 1995), that the record supports the method used, and that

the Court acted independently in its allocation decisions, we conclude that it acted

well within its discretion in both its fee calculation methodology and allocation

procedure.[10]

## C

We next address the only area in which the District Court's fee award

requires additional attention on remand: the explanation for its award to the

Faneca Objectors.

In class action settlements, a court may award attorneys' fees to prevailing

parties, including objectors.  See Halley v. Honeywell Int'l, Inc., 861 F.3d 481,

496 (3d Cir. 2017) (quoting Fed. R. Civ. P. 23(h)); In re Cendant Corp. PRIDES

Litig., 243 F.3d 722, 743 (3d Cir. 2001).  District courts have "broad discretion in

---

[10] Contrary to the arguments of several Appellants, the District Court's allocation procedure did not offend due process, and their citation to In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 613 (1st Cir. 1992), does not further their argument.  Nineteen Appeals is not binding and is factually distinguishable.  There, the district court precluded one group of fee applicants from "rais[ing] objections or otherwise address[ing] the Court" at the fee allocation hearing.  Id.  In our case, all firms were permitted to make written submissions, and the Court heard oral argument from representatives of each group challenging Seeger's proposed fee allocation. Furthermore,  Appellants fail to recognize that in a subsequent appeal in the Nineteen Appeals litigation, a second due process challenge to the fee allocation proceedings was rejected because the district court gave all parties the chance "to present their case" and provided them "a meaningful opportunity to be heard."  In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 301 (1st Cir. 1995).  Since the parties here received "a meaningful opportunity to be heard" and to "present their case," due process was provided. Id.

11

deciding whether, and in what amount, attorneys' fees should be awarded [to objectors] since [they are] in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." Cendant PRIDES, 243 F.3d at 743 (quoting White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974)).[11]

To determine whether to award a fee, courts consider several factors, including the benefits attorneys have given to the class. Diet Drugs II, 582 F.3d at 541; see also In re Fine Paper Antitrust Litig., 751 F.2d 562, 583 (3d Cir. 1984) (instructing that a court allocating a common fund among attorneys "responsible for its creation" must "determine the value of each attorney's services to the class"). We review that determination for abuse of discretion, Cendent PRIDES, 243 F.3d at 742, by looking to the district court's reasoning, AT & T Corp., 455 F.3d at 164 ("We require district courts 'to clearly set forth their reasoning for fee awards so that we will have a sufficient basis to review for abuse of discretion.'" (quoting Rite Aid, 396 F.3d at 301)).

---

[11] Appellants argue that the District Court was not "in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery," Cendant PRIDES, 243 F.3d at 743 (quoting White v. Auerbach, 500 F.2d at 828), and should have instead appointed a special master or asked a magistrate judge to provide a report. We are hard-pressed to think of anyone better than Judge Brody in this instance to make this decision. The Court presided over the case from the start and thus had a "very full picture of the roles and responsibilities of the different attorneys in the litigation," JA 91, and an informational advantage that a special master or magistrate judge not involved in the case would lack. Retaining this duty was well within the Court's discretion. See Fed. R. Civ. P. 53; Gen. Motors Corp., 55 F.3d at 821.

Unlike its explicit fact finding and the fulsome explanations it provided for the other fee applicants, we cannot discern the factual basis for the District Court's $350,000 award to the Faneca Objectors. Despite recognizing that the Faneca Objectors "are entitled to compensation for the work they performed for the class," the District Court awarded them $350,000, a 0.08 multiplier of their $4.3 million lodestar. JA 106. The Court gave no explanation for how it came up with this amount. Nor did it explain why it awarded the Faneca Objectors a multiplier less than the full amount of their lodestar or why the Faneca Objectors' work warranted a multiplier far below that awarded to every other counsel. The Court noted only that the Faneca Objectors' $20 million requested fee (nearly five times its $4.3 million lodestar) was "unreasonable" and that $350,000 was sufficient "[i]n consideration of the service provided as liaison counsel and the firms' role in providing benefits to the class." JA 106.

Because the Court did not identify the facts that led it to reach these conclusions, we are unable to review it. Therefore, we will remand for the Court to provide the facts that supported its fee determination. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 726 F.3d 403, 416 (3d Cir. 2013) (instructing that a district court "must support its findings with a sufficient articulation of its rationale to allow for meaningful appellate review").

## III

For the foregoing reasons, we will affirm in part and remand in part with respect to the attorneys' fee awarded to the Faneca Objectors.