**Sharyn STAGI and Winifred Ladd, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendants.**

**Civ. Action No. 03–5702.**

United States District Court, E.D. Pennsylvania.

July 3, 2012.

Alan M. Sandals, Scott M. Lempert, Sandals & Associates, PC, Philadelphia, PA, Michael F. Mirarchi, Timothy M. Kolman Esq. & Associates, The Shoppes at Flowers Mill, Langhorne, PA, for Plaintiffs.

Sarah Andrews, William J. Delany, Morgan Lewis Bockius, LLP, Pittsburgh, PA, for Defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Following nine years of class action litigation between named Plaintiffs Sharyn Stagi and Winifred Ladd and Defendant National Railroad Passenger Corporation ("Amtrak"), class counsel have brought before me a motion for final approval of proposed class action settlement (Doc. No. 139) and a petition for award of attorneys' fees, reimbursement of expenses, and for special payments to named plaintiffs (Doc. No. 140).[1] After holding a final fairness

1. On June 6, 2012, Plaintiffs filed a Supplement to Class Counsel's Fee Petition (Doc. No. 141) to correct two errors related to the reimbursement of litigation expenses.

hearing on June 25, 2012, I will now approve the final settlement agreement. I will also grant the request for attorneys' fees, reimbursement of expenses and incentive awards for class representatives. The related Order Granting Final Approval of Class Action Settlement and Entering Final Judgment provides an overview of the approved agreement. Here, I will only address my approval of attorneys' fees.

## I. Background

Plaintiffs Sharyn Stagi and Winifred Ladd brought this civil action against Amtrak asserting that a company policy ("One Year Rule") that requires all union employees to have one year of service in their current position before they will be considered for promotion has a disparate impact on female union employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The approved settlement agreement resolves all claims asserted by Plaintiffs and the members of the settlement class against Amtrak and will result in Amtrak's permanent elimination of the One Year Rule as applied to union employees and a cash payment to the class of $1,990,000, less amounts for attorneys' fees, expenses of litigation and settlement administration.

## II. Attorneys' Fees & Expenses

Class counsel request attorneys' fees in the amount of $1,219,467.79, which represents twenty-seven percent of the minimum projected value of the settlement.[2] Class counsel also seek reimbursement of litigation and settlement administration expenses in the amount of $180,532.08. The combined value of the requested fee award and reimbursement of expenses is $1,399,999.87. The mailed Notice of Certification of Settlement Class and Proposed Class Action Settlement informed the settlement class members that class counsel would seek an award of attorneys' fees and expenses "in an amount that [would] not exceed $1,400,000." No class member objected to any aspect of the proposed settlement agreement.

■ Federal Rule of Civil Procedure 23(h) states: "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." The proposed settlement agreement provides for the award of attorneys' fees and expenses. Nonetheless, "a thorough judicial review of fee applications is required in all class action settlements." *In re Prudential Ins. Co. of Amer. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir.1998) (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir.1995)).

■ Courts generally use one of two methods for assessing requests for attorneys' fees: the lodestar method or the percentage-of-recovery method. *In re Prudential*, 148 F.3d at 333. The former is "more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method

---

**2.** The minimum projected value includes the proposed cash settlement and Dr. Crawford's calculation of injunctive relief. *See* Crawford Decl. (Doc. No. 140–3). Dr. Crawford provides an estimate of the financial value of the provision of the Settlement Agreement in which Amtrak agrees to eliminate the One Year Rule. He "define[s] that value as the damages that would likely have been suffered by female employees who would not have been promoted, but for the agreement to abolish the One Year Rule." Crawford Decl. Although less than half of the settlement is in cash, the elimination of the One Year Rule provides prospective financial value. Nonetheless, I recognize that injunctive relief can be difficult to approximate, so I rely upon Dr. Crawford's more conservative estimates.

would provide inadequate compensation." *Id.* The latter method is "generally favored in cases involving a common fund . . . ." *Id.* Either way, "it is sensible for a court to use a second method of fee approval to crosscheck its initial fee calculation." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir.2005). This case involves a common fund, and therefore the percentage-of-recovery method is appropriate.

### 1. Common Fund

■ "[I]n the traditional common fund situation . . . the district court . . . should attempt to establish a percentage fee arrangement agreeable to the Bench and plaintiff's counsel." Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 255 (1985). In order to make that determination, the Third Circuit has identified ten factors for the Bench to consider. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir.2009) (citing *Gunter*

*v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir.2000); *In re Prudential*, 148 F.3d at 336–40). These *Gunter/Prudential* factors are not exhaustive, and a district court should consider " 'any other factors that are useful and relevant with respect to the particular facts of the case.' " *In re Diet Drugs*, 582 F.3d at 541 n. 34 (quoting *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir.2006)).

### a. The Size of the Fund Created and the Number of Persons Benefitted

■ The settlement is for $1.99 million and injunctive relief worth a *minimum* estimated value of $2.5 million over the next four years.[3] *See* Crawford Decl. (Doc. No. 140–3). The settlement class is estimated to have 5,383 current members. The elimination of the One Year Rule will also benefit future, unionized Amtrak employees.

■ In general, as the size of the settlement fund increases the percentage of the award decreases. *See In re Prudential*, 148 F.3d at 339. "The basis for this inverse relationship is the belief that '[i]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.' " *Id.* (citing *In re First Fid. Bancorporation Sec. Litig.*, 750 F.Supp. 160, 164 n. 1 (D.N.J.1990)). But this case does not involve a settlement award that is so large as to necessitate an automatic reduction in the percentage award. The *Prudential* recovery was in excess of $1 billion, and the Third Circuit cited to the trial court's analysis of settlements above $100 million for establishing the inverse relationship principle. *See In re Prudential*, 148 F.3d at 339 (referencing *In re Prudential*, 962 F.Supp. 572, 585

---

**3.** The $1.99 million includes settlement administration expense reimbursements of up to $40,000, subject to reversion to Amtrak of any unspent balance of the $40,000.

(D.N.J.1997)). None of Plaintiffs' expert calculations qualify this proposed settlement fund for a mega-fund reduction in fees. *See* Crawford Decl. Therefore, the size of the fund and the number of people who will receive the maximum damages militate in favor of approving this fee petition.

### b. The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel

■ All objections had to be postmarked on or before June 11, 2012. As of the afternoon of June 18, 2012, no objections were filed. *See* Lempert Decl. (Doc. No. 142). The absence of objections counsels in favor of approval.

### c. The Skill and Efficiency of the Attorneys Involved

■ Sandals & Associates, P.C., along with Kolman Ely, P.C., served as counsel for the named Plaintiffs and class since the inception of the action in 2003. Sandals & Associates did the vast majority of the legal work. The firm's attorneys Scott Lempert and Alan Sandals have approximately forty-six years of combined experience in complex ERISA and class action litigation. Both attorneys have spearheaded a number of class action lawsuits and are leading members of the national ERISA plaintiffs' bar. *See, e.g., In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 242 F.3d 497 (3d Cir.2001); *In re Campbell Soup Co. Retiree Med. Benefits ERISA Litig.*, 898 F.Supp. 1118 (D.N.J. 1995). The firm has brought its considerable experience to bear in reaching this settlement. Also, the fact that Plaintiffs' counsel obtained this settlement in the face of formidable legal opposition further evidences the quality of their work. This factor weighs in favor of approval.

### d. The Complexity and Duration of the Litigation

■ Class counsel devoted more than nine years to this highly complex litigation. In addition to conducting extensive discovery, counsel utilized statistical evidence to survive Amtrak's dispositive motions. Counsel not only filed written briefs but also participated in oral arguments regarding Plaintiffs' motion for class certification and Defendant's motion for summary judgment. Class Counsel also appealed the summary judgment ruling in favor of Amtrak and won. The Third Circuit's remand extended the duration of the litigation, weighing in favor of approval. Following the remand, class counsel worked diligently on reaching a settlement.

### e. The Risk of Nonpayment

■ In every class action in which class counsel bring a case on a contingency basis, there is always some risk of nonpayment. However, the risk here is minimal. In *Rite Aid*, the Third Circuit dealt with this factor by considering the risk of the defendants going out of business. *In re Rite Aid Corp.*, 396 F.3d 294, 304 (3d Cir.2005). Amtrak is not in danger of going out of business, so this is a neutral factor.

### f. The Amount of Time Devoted to the Case by Plaintiffs' Counsel

■ In their declarations, class counsel provide summaries of the amount of time spent on this matter. Sandals & Associated logged 2,920.6 hours. Attorney Scott Lempert accounted for 2,556.1 of those hours. Kolman Ely, P.C. expended 174.4 hours on this litigation. *See* Lempert Decl.; Ely Decl. In total, class counsel devoted 3,095 hours to this matter. Such a large number of hours represents a substantial commitment to this litigation and weighs in favor of approving the fee re-

quest. The record of this litigation also indicates that the time spent by class counsel was necessary for the successful prosecution of this case considering both the complexity involved and the defense mounted by Amtrak.

### g. The Awards in Similar Cases

■ As I noted in *In re Corel*, this District's fee awards generally range between nineteen and forty-five percent of the common fund. *See In re Corel Corp., Inc. Sec. Litig.*, 293 F.Supp.2d 484, 497 (E.D.Pa.2003) (referencing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F.Supp. 525, 533 (E.D.Pa.1990)); *see also Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21, 2011 U.S. Dist. LEXIS 38663, at *59 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund.") (citing *In re G.M.*, 55 F.3d at 822). Therefore, the twenty-seven percent request in this case is reasonable. By itself, this factor neither supports nor undercuts the proposed fee award and is neutral. This factor in conjunction with the lodestar cross-check, however, weighs in favor of approval.

### h. The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups

■ Class counsel was not assisted by a government investigation. In *Prudential*, the Third Circuit singled this factor out for important consideration by district courts. *See In re Prudential*, 148 F.3d at 338. The appeals court remanded the trial court's fee award for wrongly "credit[ing] class counsel with creating the entire value of the settlement" and overlooking the considerable contributions of a multi-state life insurance task force. *Id.* Yet this case is more similar to *AT & T*, in which the Third Circuit found that "class counsel was not aided by the efforts of any governmen-tal group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel." *In re AT & T*, 455 F.3d at 173. This factor supports approval of the fee request.

### i. The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel was Retained

■ It is extremely difficult to determine what fee would have been negotiated at the outset of the litigation. I can only look to my colleagues who have attempted to apply this factor, even though I recognize that the contingent fee can only be "based on the particular facts and circumstances of the specific litigation under consideration." *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D.Pa.1994). After appointing a Special Master to study the award of attorneys' fees in a class action securities suit, Judge Dalzell approved of the Special Master's recommendation that a thirty percent fee award was an appropriate estimate of what would have been negotiated. *See id.* (citing Report and Recommendation of Special Master Judge Arlin M. Adams).

In the end, I do "not give great weight to this hypothetical exercise." *In re Prudential*, 148 F.3d at 340. Although this is not a proposed settlement in the range of *Prudential*'s $1 billion, this is still a significant sum of money that should not be subjected to such arbitrary calculations. Therefore, this factor is neutral and will not be considered to count for or against the proposed fee request.

### j. Any Innovative Terms of Settlement

■ In addition to the monetary settlement, Amtrak also eliminated the One Year Rule, effective September 8, 2011. As a result, current and future unionized

employees will not have to complete one year of service in their current positions before being considered for promotion. Female employees will no longer be subjected to the rule's disparate impact. This factor counsels in favor of approval.

### k. Summation

I recognize that the *Gunter/Prudential* factors " 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.' " *In re AT & T*, 455 F.3d at 166 (citing *In re Rite Aid*, 396 F.3d at 301). After reviewing all of the factors, I have determined that seven of the ten *Gunter/Prudential* factors counsel in favor, zero against, and three are neutral. Therefore, the majority support approval of the fee award.

### 2. Lodestar

■ The lodestar cross-check also favors approval of the fee request. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid*, 396 F.3d at 305.

### a. Number of Hours & Hourly Rate

■ As of May 17, 2012, class counsel and staff informed the Court that they had spent a total of 3,095 hours working on this case. The nine years of litigation involved, amongst other work, preparing the complaint, responding to dispositive motions, winning on appeal, and participating in extensive settlement negotiations. The law firms charged different amounts based on their average billable rates and the individual attorney or staff member working on the assignment. Taking into account the varied rates, the lodestar requires multiplication of the hours reasonably worked by the reasonable billing rates. I found that the rates were reasonable and recognize that the equation results in a total lodestar of $1,373,601.

### b. Lodestar Multiplier

■ "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier." *In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir.2009) (citing *In re Rite Aid*, 396 F.3d at 305–06). The Third Circuit explained that "multipliers may reflect the risks of non-recovery facing counsel, may serve as an incentive for counsel to undertake socially beneficial litigation, or may reward counsel for extraordinary result. By nature they are discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340. The lodestar multiplier is calculated by dividing the attorneys' fees sought by class counsel ($1,219,467.79) by the total amount of hours class counsel devoted to the litigation times class counsel's hourly rates ($1,373,601). Here, that calculation comes to a multiplier of .888. Therefore, class counsel will only be receiving approximately 89% of what they would have received at their regular billing rates. I have previously approved a positive multiplier of 2.04, in which counsel received twice what they would have earned under their regular billing rates. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D.Pa. 2000). The Third Circuit, moreover, has recognized that " 'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.' " *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir.2001) (citing *In re Prudential*, 148 F.3d at 341). Therefore, a negative multiple of .888 is well under the generally acceptable range and provides strong additional support for approving the attorneys' fee request.

## III. Conclusion

For the reasons set forth above, I will grant Plaintiffs' Motion for Award of Attorneys' Fees.

### ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTERING FINAL JUDGMENT

A hearing having been held before this Court on June 25, 2012, pursuant to this Court's Order dated March 20, 2012 (the "Preliminary Order"), upon the Joint Stipulation of Settlement and Release and the exhibits annexed thereto, dated August 4, 2011 (the "Settlement Agreement") filed in this action; the Court having determined that due notice of the proposed settlement and of that hearing was given to all members of the Settlement Class (as that term is defined in the Settlement Agreement and as certified by this Court in the Preliminary Order) whose interests are affected by the proposed settlement in accordance with the Preliminary Order; the respective parties having appeared by their attorneys of record at the hearing; all members of the Settlement Class having been given due notice of their rights and an opportunity to be heard and to present their legal and factual arguments in opposition to or approval of the Settlement Agreement including the proposed Plan of Allocation for settlement proceeds, the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, the request for approval and reimbursement of administrative expenses of the settlement, and for an award of special compensation to the Named Plaintiffs; and the entire matter of the proposed settlement having been heard and considered by the Court;

This 3rd day of July, 2012,

It is **ORDERED** that (1) Plaintiffs' Motion for Final Approval of Settlement, and (2) Petition for Award of Attorneys' Fees and Expenses and Special Compensation to Named Plaintiffs, are **GRANTED;** and it is further **ORDERED** as follows:

1. To the extent defined in the Settlement Agreement, the terms in this Order shall have the meanings set forth therein.

2. The Notice of Proposed Settlement of Class Action and Settlement Hearing (the "Settlement Notice") was mailed by first class mail on or about April 20, 2012, in accordance with the Preliminary Order, to all members of the Settlement Class who could be identified with reasonable effort at their last known addresses.

3. The Court determines pursuant to Rule 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure that the form and method of notifying members of the Settlement Class through mailing of the Settlement Notice constitute the best notice practicable under the circumstances, and that due and sufficient notice of the proposed settlement, the Settlement Hearing and the rights of all members of the Settlement Class has been provided. The Court further determines that such notice meets all requirements of due process; and that all members of the Settlement Class are bound by the Order and Final Judgment entered herein.

4. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Agreement and the terms thereof, including the Plan of Allocation and the terms thereof, are finally approved and confirmed as being fair, reasonable and adequate as to all members of the Settlement Class, for the reasons stated in the papers filed by the parties and stated on the record at the Settlement Hearing. In summary, the Court finds that extensive investigation, research and litigation has been conducted such that counsel for all parties are able to evaluate their respective risks of further litigation, including the additional costs and delay associated

with further prosecution of this Action. The Court further finds that the Settlement Agreement has been reached as a result of intensive, arms-length negotiations overseen by retired U.S. Magistrate Judge Diane M. Welsh. The Court finds and hereby confirms that there are no other agreements which have been made in connection with the settlement. The Court further finds and determines that Amtrak's termination of the One Year Rule and the contemplated payments to the members of the Settlement Class, as provided in the Settlement Agreement and the proposed Plan of Allocation, are fair, reasonable and adequate. The Court thus gives final approval to and orders that those payments be made to the Settlement Class members. The parties are hereby directed to take all necessary steps to effectuate the terms of the Settlement Agreement.

5. This action, and all claims asserted in the Amended Complaint, whether asserted by Named Plaintiffs on their own behalf or on behalf of the Settlement Class, are hereby dismissed with prejudice, without additional costs to any of the parties other than as provided for in the Settlement Agreement. As of the Effective Date of Settlement, each Named Plaintiff and each member of the Settlement Class is hereby barred and permanently enjoined from prosecuting, commencing, or continuing any and all claims, rights, demands, liabilities and causes of action regarding or relating in any way to the One Year Rule, whether known or unknown, under federal, state or local law, statute, ordinance, regulation, common law or other source of law, regardless of whether such claims sound in contract, tort, or statute, or seek legal or equitable relief, arising or accruing at any time from the date she was first employed by Amtrak, or any of its predecessors or affiliates, direct or indirect, through the date of entry of this Order. In addition, as of the Effective Date of Settlement, each Named Plaintiff and each member of the Settlement Class shall be conclusively deemed to have, and by operation of this Order shall have, fully, finally and forever settled, released, relinquished, waived and discharged Defendant and all other Amtrak Releasees from all released claims (as defined in Paragraphs 67 through 68 of the Settlement Agreement).

6. The Court having considered the application of Class Counsel for an award of attorneys' fees and reimbursement of expenses out of the settlement proceeds, the Court hereby grants the application and awards to Class Counsel out of the settlement proceeds attorneys' fees in the amount of $1,219,467.79 and reimbursement of litigation and settlement administration expenses in the amount of $120,532.08. This award shall be in full compromise and satisfaction of all attorneys' fees and expenses incurred by Class Counsel. The Court also hereby approves and awards to each of the named plaintiffs special compensation in consideration of their substantial services over eight years for the benefit of all Settlement Class members. The amount of the special payment to each named plaintiff is $50,000. These payments shall be in addition to the sums that each Named Plaintiff is entitled to receive under the terms of the Plan of Allocation. These awards of fees and expenses and of special compensation to the Named Plaintiffs shall be paid from the Escrow Account within five (5) business days of the deposit of the Settlement Amount in the manner provided in the Settlement Agreement. These awards will include a *pro rata* share of interest earned on the Escrow Account from the date of its establishment until the date the awards are paid out.

7. The Court hereby approves of the establishment of the Escrow Account de-

scribed in Paragraph 45 of the Settlement Agreement.

8. The costs and expenses, including the payment of any taxes or tax withholdings, associated with the investment of the Escrow Account and/or the administration of the Settlement Agreement, including the Plan of Allocation, which have been or will be incurred after the date of submission of the request for approval or reimbursement of administrative expenses of the settlement shall be paid pursuant to the terms of the Settlement Agreement.

9. In the event that the Settlement Agreement is cancelled or terminated pursuant to Paragraph 38 of the Settlement Agreement, then (a) this Order and Final Judgment shall be rendered null and void and shall be vacated and of no further force or effect, without prejudice to any party, and Plaintiffs and Defendant shall be deemed to have reverted to their respective statuses prior to the execution of the Settlement Agreement, and they shall proceed in all respects as if the Settlement Agreement had not been executed and the related orders had not been entered, preserving in that event all of their respective claims and defenses in the Action.

10. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

11. This Order, and the Settlement Agreement and any exhibits and attachments thereto, shall not be cited in any matter for the purpose of seeking preliminary or final certification of any class or collective action.

12. The parties, including the members of the Settlement Class, submit to, and the Court shall retain, continuing jurisdiction of this matter for the purposes of consummating, implementing, supervising, interpreting and enforcing the Settlement Agreement and the terms of this Order and Final Judgment, resolving any dis-

putes that may arise in accordance with the procedures set forth in Paragraph 59 of the Settlement Agreement, and entering any further orders as may be necessary and appropriate, in each case without affecting the finality of this Order and Final Judgment.

13. The Clerk of the Court is directed to enter this Order and Final Judgment as a final judgment and dismissal with prejudice with respect to each Named Plaintiff and each member of the Settlement Class pursuant to Rule 41(a)(2), Fed.R.Civ.P. The Court's reservation of continuing jurisdiction pursuant to the preceding paragraph shall not affect in any way the finality of this Order and Final Judgment.